**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**RICHARD G. TITUS,**                 )
                                      )
            **Plaintiff,**           )
                                        )
**vs.**                              )        **CIVIL NO. 07-cv-614-MJR**
                                        )
**DONALD HULICK,** *et al.*,         )
                                        )
            **Defendants.**       )


## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Richard G. Titus, an inmate at the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___,
2009 WL 1361536, *13 (May 18, 2009).

## THE COMPLAINT

Titus alleges that on December 23, 2006, Defendant Davis made threatening and belittling
remarks to him. Then Defendants Swalls and Carter (who Titus had previously filed a grievance
against) came to Titus's cell. Titus alleges that he tried to explain the situation to Swalls and Carter,
but they ignored Titus and told him to "cuff up." Titus refused. Defendants Swalls and Carter left
and, then, returned with Lieutenant Rees. The Defendants then explained to Titus that the tactical
team (referred to in the complaint as "Orange Crush") would be called if he did not "cuff up." Titus
still refused to be handcuffed. Titus then alleges that Swalls threw coffee on him. Next the tactical
team (which Defendant Carter is a member of) came and detained Titus. Titus alleges that the
tactical team used excessive force and even assaulted him. Titus alleges that he suffered numerous
injuries which he showed to nurses and medical technicians, but they refused to write all of them
on the report. He also alleges that he was denied proper medical care for his injuries. Titus alleges
the injuries resulted in purple scars. Titus also claims he repeatedly asked for Internal Affairs to
come, but no one would listen to him.

As a result of this incident, Plaintiff received multiple disciplinary tickets. In disciplinary
tickets 200602855/1 and 200602855/2, Plaintiff was charged with violating rule 304 (insolence);
rule 206 (intimidation or threats); rule 403 (disobeying a direct order); and rule 404 (violation of
rules - orientation manual pg. 93). Plaintiff was found guilty of these violations and received the
following punishment: 6 months on "C-Grade"; 6 months segregation; 6 months commissary
restriction; and 3 months yard restriction.

In disciplinary tickets 200602856/1, 200602856/2, and 200602856/3, Plaintiff was charged with violating rule 206 (intimidation or threats); rule 102 (assaulting staff by throwing a liquid); rule 304 (insolence); rule 403 (disobeying a direct order); rule 601 (attempt to violate rule 102 (assault) by swinging a sock loaded with soap bars at staff); and rule 104 (dangerous contraband - sock containing bars of soap). Plaintiff was found guilty of these violations and received the following punishment: 1 year "C-Grade"; 1 year segregation; revoke 1 year good conduct credit; confiscation of property; 6 months restricted contact visits; 1 year commissary restriction; and 3 months yard restriction.

Titus claims that the disciplinary reports relating to the above incident are false. He also alleges that during the disciplinary hearings, Defendant Mitchell refused to consider his mental health status which resulted in a denial of his right to due process. Titus also alleges that Mitchell and Defendant Fernandez refused to allow him to call witnesses in reference to the incident and charges. Titus claims that the false disciplinary report along with the denial of witnesses and mental health information as evidence resulted in him being found guilty of all charges. Titus claims that he filed a grievance against the false disciplinary reports but received no response from the grievance office.

Titus alleges that Defendant Maue went to the law library and forged his name and number and filed unspecified legal documents in his name with an appellate court. Titus claims he filed a grievance on this matter. When he heard back from the grievance he was asked to interview with Internal Affairs. Defendant Murry asked Titus if he had filed a grievance against Maue and Titus answered yes and showed Murry the grievance papers. The grievance was denied and Titus appealed to the director.

Titus claims that the lights in his cell were left on 24 hours every day and that he could not turn them off. Titus claims that later the light bulbs in his cell burned out and the lights could not be turned on. Titus claims he informed Defendants Priddy and Harris about the light bulbs being burned out, but they did nothing. Titus claims that because he was unable to turn on the lights in his cell, he was denied a shower for two weeks.

Later, Titus was moved to a different cell. At one point Titus claims his toilet was overflowing and he tapped on his cell door to get an officer's attention. He alleges that Priddy and Defendant Campbell were aware of the situation but ignored him. Titus then alleges that Priddy and Campbell turned off the toilet and turned the water pressure up so high that water shot out of the sink and soaked his bedding. Titus claims he repeatedly notified different guards, including Defendant Mezo, about his wet mattress but nothing was done until two days later when he received a dry mattress. Titus filed a grievance on this matter.

Finally, exhibits attached to the complaint indicate that Defendant Robinson issued Plaintiff a disciplinary ticket (No. 200701194/1) on or about May 28, 2007, for violating rule 206 (intimidation or threats), rule 304 (insolence), and rule 403 (disobeying a direct order). Plaintiff was found not guilty of violating rule 206, but was found guilty of violating rules 304 and 403. Plaintiff received the following punishment: 3 months on "C-Grade"; 3 months segregation; and 3 months commissary restriction. With regard to this disciplinary action, the complaint alleges only that the disciplinary ticket was not properly served on him.

Based on the allegations of the complaint, the Court finds it convenient to divide Titus's complaint into eight counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation

4

of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendant Davis for verbally harassing him in violation of the Eighth Amendment.
>
> **COUNT 2:** Against Defendants Swalls, Carter, and Unknown Tactical Team Members[1] for using excessive force against him in violation of his Eighth Amendment rights.
>
> **COUNT 3:** Against Defendants Braun and Miget for denying Plaintiff adequate medical care for his injuries in violation of the Eighth Amendment.
>
> **COUNT 4:** Against unspecified defendants for failing to adequately investigate Plaintiff's claim of excessive use of force.
>
> **COUNT 5:** Against Defendants Mitchell and Fernandez for denying him due process of law in connection with the December 23, 2006, disciplinary tickets.
>
> **COUNT 6:** Against Defendants Maue and Murry for denying access to the courts by filing forged papers with the appellate court.
>
> **COUNT 7:** Against Defendants Priddy and Harris for violating Plaintiff's Eighth Amendment rights by allowing the substandard conditions in Plaintiff's cell (i.e., too much light, insufficient light, infrequent shower, and wet bedding).
>
> **COUNT 8:** Against Defendant Richardson for denying Plaintiff due process of law in connection with the May 28, 2007, disciplinary ticket.

<u>DISCUSSION</u>

**A. Verbal harassment (Count 1).**

Isolated, infrequent incidents of verbal abuse do not give rise to an Eighth Amendment claim. *See, e.g ., Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992). By itself, verbal harassment does not constitute cruel and unusual

---

[1]Plaintiff did not name the members of the tactical team (other than Defendant Carter) as Defendants in the caption of his complaint as required by Rule 10(a) of the Federal Rules of Civil Procedure. It appears, however, that Plaintiff is seeking relief against these persons. Therefore, the Court will direct the Clerk to add as a defendant in this action "Unknown Tactical Team Members."

punishment, deprive Plaintiff of a protected liberty interest, or deny Plaintiff equal protection of the law.

*DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). *See also Antoine v. Uchtman*, 275 Fed.Appx. 539, 541 (7th Cir. 2008) ("[T]he Constitution does not compel guards to address prisoners in a civil tone using polite language."). Therefore, Count 1 of the complaint does not survive threshold review and must be dismissed.

### B. Excessive force claim (Count 2).

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Applying these principles, Count 2 of the complaint survives threshold review and should not be dismissed at this time.

### C. Medical claim (Count 3).

Deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). Based on these principles, Count 3 survives threshold review and should not be dismissed at this time.

**D. Failure to investigate (Count 4).**

In Count 4, Plaintiff claims that unspecified defendants failed to adequately investigate the incident that occurred on December 23, 2006. Assuming that some defendant had a duty to investigate the incident (after-the-fact), it is unclear how the failure to discharge that duty deprived Plaintiff of a property or liberty interest. Furthermore, it is hard to understand how the failure to investigate the alleged use of force (again, after-the-fact) could make any defendant liable for the

attack. More problematic, however, is that Plaintiff has completely failed to assert which defendants

he is attempting to hold liable for the failure to investigate the December incident. As such, the

complaint does not adequately put the defendants on notice of which defendants are alleged to have

violated Plaintiff's rights and how. Therefore, Count 4 should be dismissed.

**E. Due process: disciplinary tickets from December 23, 2006 (Count 5).**

In *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984), the Seventh Circuit held that the filing

of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim

when the accused inmate is given a subsequent hearing on those charges in which the inmate is

afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The

Seventh Circuit reasoned that prisoners have a right "to be from arbitrary actions of prison officials,"

*id.* at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate

protection against arbitrary actions taken by a correctional officer such as issuing the inmate a

fabricated conduct violation. In the instant complaint, Plaintiff alleges that he was *not* provided the

procedural protections outlined in *Wolff*. Therefore, Plaintiff would appear to claim that issuing him

the (false) conduct violation - and denying him procedural due process in connection with that

conduct violation - deprived him of his substantive right "to be from arbitrary actions of prison

officials."

In *Sandin v. Connor*, 515 U.S. 472 (1995), however, the Supreme Court of the United States

rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty

interest under the Due Process Clause." *Id*. at 484. Furthermore, the Supreme Court held that while

a state could create a liberty interest protected by the Due Process Clause, such interests were

limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate

in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as on administrative segregation and protective custody. *Id*. at 2301.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest - under either the Due Process Clause or state law - so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175.

In sum, an allegation that a prisoner was issued a "false disciplinary report" - standing alone - does not state a claim under § 1983. To be actionable, the prisoner must have suffered an "atypical, significant deprivation" (or other loss of a protected liberty interest) and must have been denied procedural due process.

In connection with disciplinary tickets 200602856/1, 200602856/2, and 200602856/3, the disciplinary sanctions imposed on Plaintiff also included the loss of 1 year good conduct credit. The loss of good conduct credit implicates a liberty interest because such a loss potentially effects the length of Plaintiff's sentence.

With regard to these disciplinary tickets, Plaintiff's complaint seeks restoration of good time credits - a remedy available in federal court only by means of an action for a writ of habeas corpus (but only after Plaintiff has exhausted his remedies through the Illinois state courts). *Presier v. Rodriguez*, 411 U.S. 475, 500 (1973). Furthermore, Plaintiff's claim for damages must also be dismissed because if Plaintiff's allegation is true that the Defendants completely fabricated the conduct violation and denied him the *Wolff* procedural protections, then that would imply that the decision made by Defendant Mitchell was wrong. Where, as here, a judgment in Plaintiff's favor would necessarily imply the invalidity of the disciplinary hearing and resulting loss of good conduct credits, Plaintiff's claim is not cognizable under § 1983 unless and until Plaintiff has the disciplinary action overturned through some other means such as a habeas corpus action. *See Edwards v. Balisok*, 520 U.S. 641, 645-46 (1997); *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). Because Plaintiff does not allege that the disciplinary action has been overturned in a separate proceeding, Count 5 must be dismissed.

**F. Access to the courts (Count 6).**

The Court is required to take as true Plaintiff's allegation that Defendant Maue forged Plaintiff's name to some documents and filed those documents with an appellate court. While the Court does not condone such actions, it's not clear what constitutional right if any, such an act violates. Plaintiff's claim sounds like an access to the courts claim. But, an inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). In this case, there is no indication that a non-frivolous legal claim was actually frustrated or impeded by the alleged actions of Defendant Maue. Therefore, Count 6 should be dismissed.

**G. Cell conditions (Count 7).**

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime .*Id.,* (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346 ; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id.* The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of

unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

In the case at hand, Plaintiff's claim that he was housed in a cell with faulty lighting, that he was denied a shower (on one occasion) for two weeks, and that he had a wet mattress for two days does not satisfy the objective prong of an Eighth Amendment claim. Given the short nature of the alleged conditions, the Court finds that none of them deprived Plaintiff of an unquestionable human need or deprived Plaintiff of the minimal civilized measure of life's necessities. Therefore, Count 7 of the complaint should be dismissed.

**H. Due process: disciplinary ticket from May 28, 2007 (Count 8).**

As noted in section E above, this Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or

protective custody does not implicate any liberty interest - under either the Due Process Clause or state law - so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175.

With regard to the May 28, 2007 disciplinary ticket, Plaintiff was sent to disciplinary segregation for 3 months; demoted to "C-Grade" for 3 months; and had his commissary restricted for 3 months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Count 8 of the complaint should be dismissed.

**H. Motion for appointment of counsel.**

Also before the Court is Plaintiff's motion for appointment of counsel (Doc. 8). There is no absolute right to appointment of counsel in a civil case. *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971). When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself." *Pruitt v. Mote*, 503 F.3d647, 854-55 (7th Cir. 2007). With regard to the first step of the inquiry, there is no indication at all whether Plaintiff has attempted to obtain counsel or been effectively precluded from doing so. Therefore, the instant motion will be denied without prejudice.

<u>**DISPOSITION**</u>

Counts 1, 4, 5, 6, 7, and 8 of the complaint do not survive review under § 1915A and, accordingly, are **DISMISSED** with prejudice. Plaintiff is advised that the dismissal of these counts will count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Because there are no claims currently pending against them Defendants Hulick, Maue, Mitchell, Bedinger, Dilday, Pelker, Vasquez, Davis, Robinson, Mezo, Henry, Harris, Fritz, Campbell, Priddy, Murry, and Senejia are **DISMISSED** from this action as defendants.

Plaintiff's motion for appointment of counsel (Doc. 8) is **DENIED** without prejudice.

The Clerk is **DIRECTED** to add "Unknown Tactical Team Members" as a defendant to this action.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **Swalls, Carter, Braun, and Miget**. The Clerk shall forward those forms, USM-285 forms submitted by Titus, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **Swalls, Carter, Braun, and Miget** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the "Unknown Tactical Team Members" until such time as Titus has identified them by name on a USM-285 form and in a properly filed amended complaint. Titus is **ADVISED** that it is Titus's

responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Titus, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566©).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Titus is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration

15

by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636©), *should all the parties consent to such a referral.*

Titus is **ADVISED** of his continuing obligation to keep the Clerk [and each opposing party] informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED this 24th day of July, 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**