## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RICHARD G. TITUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-cv-0614-MJR-PMF** |
| | ) | |
| **MATTHEW SWALLS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, District Judge:**

In this lawsuit under 42 U.S.C. § 1983, Plaintiff Richard Titus alleges that Defendants — employees of the Menard Correctional Center — violated his Eighth Amendment freedom from cruel and unusual punishment in December 2006 two ways: (1) by employing excessive force during a tactical team detention on December 23 and (2) by being deliberately indifferent to his resultant injuries thereafter. Titus filed his lawsuit in late August 2007 naming 24 Defendants.  In a July 2009 Order (Doc. 9), the Court dismissed 17 Defendants and referred the claims against the remaining 7 Defendants to Magistrate Judge Philip M. Frazier for all pretrial matters, including preparation of reports and recommendations on dispositive motions.

Currently pending before the undersigned District Judge is Magistrate Judge Frazier's August 31, 2010 Report and Recommendation on Defendants' motion for summary judgment based on failure to exhaust administrative remedies (Doc. 73).

Defendants raised the issue via affirmative defense in their answers and again when they moved for summary judgment (Docs. 31, 58).

Plaintiff Titus failed to respond to the summary judgment motions. Judge Frazier appointed counsel for Plaintiff Titus and later held an evidentiary hearing on the exhaustion issue. He then submitted a Report to the undersigned Judge. The Report indicates that Judge Frazier was not persuaded Defendants had satisfied their burden of proof on the affirmative defense and recommends that the Court deny the summary judgment motions. Defendants timely objected to the recommended disposition, specifically with respect to several of Judge Frazier's findings of fact.

Because of the timely and specific objection, the Court must make a de novo determination of the matters in the Report to which Defendants object and may accept, reject or modify the recommended decision or recommit the matter to the Magistrate Judge with instructions. **28 U.S.C. § 636(b)(1)(B) (2006); Fed. R. Civ. P. 72(b); S.D. Ill. Local Rule 73.1(b);** *Govas v. Chalmers***, 965 F.2d 298, 301 (7th Cir. 1992).** After making a de novo determination, the undersigned District Judge reaches the same conclusion as Judge Frazier and will adopt his Report.

A prisoner must seek all available administrative remedies before challenging his conditions of confinement in court. **42 U.S.C. § 1997e(a).** However, he need not prove that he has complied with the exhaustion requirement. Failure to exhaust administrative remedies is an affirmative defense, meaning that a defendant must raise it and also bears the burden of proving it. *Obreicht v. Raemisch***, 517 F.3d 489, 492 (7th Cir. 2008).** This affirmative defense is not entitled to trial by jury but

instead is tried by the court as an issue of "judicial traffic control" comparable to personal jurisdiction or venue.[1] *Pavey v. Conley*, **544 F.3d 739, 741 (7th Cir. 2008).**

To prove that the prisoner plaintiff has not exhausted his administrative remedies, a defendant must show that the prisoner failed to file complaints and appeals "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** In Illinois, the prison grievance process has these steps. First, the prisoner is to resolve the complaint through a counselor to obtain an informal remedy. **20 Ill. Admin. Code § 504.810(a) (2009).** If not satisfied with that remedy, the prisoner submits a formal written grievance to the prison's grievance officer within 60 days of the discovery of the incident. *Id.* The grievance officer makes findings and recommendations to the Chief Administrative Officer of the prison (the warden), who makes the final decision. *Id.,* **§ 504.830(d).**

If still unsatisfied, the prisoner may appeal the decision to the Director of the Department of Corrections within 30 days. *Id.,* **§ 504.850(a).** The appeal to the director is handled by the Administrative Review Board (ARB), which makes a recommendation on how the director should ultimately handle the grievance. *Id.,* **§ 504.850(b)–(f).** The director has 6 months after receipt of the grievance to make a decision. *Id.,* **§ 504.850(f).**

---

[1] Even though exhaustion is comparable to personal jurisdiction and venue defenses, the Seventh Circuit distinguishes it from those defenses, noting that exhaustion does not warrant adjudication before answering. *See Pavey*, **544 F.3d at 541.**

Thus, to exhaust administrative remedies, the prisoner should consult a counselor, file a written grievance with the prison grievance officer, and appeal the determination to the director. If after complying with this procedure the prisoner receives no response in 6 months or an unfavorable response, the prisoner can sue.

To prove their defense that Plaintiff failed to fully exhaust his remedies in the instant case, Defendants argued that Titus did not file a written grievance with the prison and did not file an appeal with the ARB.  Judge Frazier reported that the evidence preponderated in favor of Titus on those issues, and Defendants object to that aspect of the Report.  Specifically, Defendants argue that Titus' testimony at the hearing regarding the exhaustion of his remedies should be discounted. It was incredible, they argue, because Titus did not provide documentation to support his testimony that he drafted and submitted grievances at the proper times and because his testimony contradicts his own answers to interrogatories. They further argue that the rest of the evidence, consisting of two affidavits from Menard employees, supports their position that Titus did not exhaust his remedies.

As to the credibility of Titus' in-court testimony, Defendants' objection is unavailing. The district judge reviews the magistrate judge's report de novo based upon the record but is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations.  Presently, there is no record of the evidentiary hearing before the Court. As of the date this Order was drafted, the objecting parties (Defendants) have not arranged for the hearing's transcription, which is fatal if they seek to challenge the Report based on Judge Frazier's impression of in-

court testimony: "the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties agree to or the magistrate judge considers sufficient." **Fed. R. Civ. P. 72(b)(2)**.

If Titus (the prisoner plaintiff who proceeds in forma pauperis) were the objecting party, the Court could order the production of the transcript and direct the United States to pay for it. **28 U.S.C. § 1915(c) (2006).**  Because Defendants are the objecting parties and are not proceeding in forma pauperis, they are responsible for transcribing the record and covering its cost.  Thus, the Court accepts Magistrate Judge Frazier's conclusion that "Plaintiff had good recollection of his actions and . . . his testimony [was] generally credible." Additionally, as the Court cannot tell without the transcript exactly what Titus said in his testimony, the Court has no choice but to conclude that the recounting of Titus's testimony in the Report is correct.  Deferring to the Magistrate Judge on credibility determinations is appropriate, since he personally observed the demeanor of the witnesses, including Plaintiff Titus.

The recounting of Titus' testimony in the Report is as follows. Titus drafted a written grievance with respect to the issues in this suit on January 6, 2007 and presented it to Gina Summers, a Menard correctional counselor. Summers received the grievance and returned it to him with a response, apparently not satisfactory to him. Titus then forwarded the grievance to the grievance office at Menard. A grievance office employee spoke with Titus and chose to forward the grievance to the Menard internal affairs division. An internal affairs employee referred to as the "dog-catcher" interviewed Titus.

Shortly thereafter, Titus received notice that the grievance had been denied. One week later (in late January of 2007), Titus appealed the denial to the ARB, which received his appeal in February 2007. This was returned as incomplete, but Titus submitted the appeal again on February 23, 2007, providing the missing documentation. Titus still had not heard from the ARB six months later, so he sued. Titus was unable to present a copy of the grievance documentation in Court, because he has been in the segregation unit with restricted access to photocopy equipment.

The undersigned Judge now weighs this story, which it assumes to be generally credible due to the lack of a transcript, in light of several opposing considerations that can be considered without the transcript. First, Defendants argue that Titus' testimony contradicts his response to interrogatories. The Court disagrees.

Defendants propounded to Titus the following interrogatory: "State the number of grievances you wrote related to the issues in your complaint. State the date that you wrote each grievance." Titus responded: "I filed at least one grievance regarding the issues of my civil law suit around approx early January 2007." That statement is perfectly consistent with the January 6 presentation of the grievance to Summers and the forwarding of that grievance to the Menard grievance office shortly thereafter.

Defendants also issued to Titus another interrogatory asking him to provide "the date of submission of each grievance at each level of the grievance process." Titus' answer was that he submitted the grievance "around approximately early Jan 2007" and that he "appealed the Investigator's decision around the end of Jan.

2007." Again, both of these statements are consistent with his claim that he formally grieved in early January and appealed the prison's decision to the ARB in late January.

Defendants argue that the "interrogatories say *nothing* about appealing a grievance to the ARB in February 2007" (Doc. 77 at p. 3), but the fact that the ARB actually received the appeal in February and that Titus finally perfected the same appeal in late February does not contradict the fact that Titus sent his grievance to the ARB in late January hoping to appeal it.

Next, Defendants argue that Titus' story regarding the completion of the appeal is incredible, because Titus could not present the documents showing that he ultimately perfected the appeal.   However, Titus squarely addressed that contention in open court, noting that he was in segregation and did not have access to photocopy equipment, which successfully explained the lack of documentation.

With those credibility objections overruled, what remains is to determine the weight to afford Titus' testimony against the other evidence, namely, the affidavits of Jeanette Cowan from Menard and Jackie Miller from the ARB.   At the threshold, these out-of-court statements are given less weight than in-court testimony since they were not subject to cross-examination.   Furthermore, even if the two individuals had given in-court testimony at the evidentiary hearing, their statements would not have contradicted Titus' testimony.

Both state that the individuals could not find any record of Titus' grievances (Cowan) or appeals (Miller), but each of these statements is explained away by the circumstances outlined in Titus' testimony. First, because the Menard grievance

office forwarded the grievance to Menard internal affairs instead of handling the matter themselves, it is not surprising that Cowan could not find the grievance in the grievance office's records. Second, although Miller stated that the ARB has no records of processing Titus' grievances, she did send a letter acknowledging receipt of his initial grievance and requesting more information, which confirms Titus' version of the events. Given how weak Defendants' evidence is in light of the competent and credible testimony by Titus, the Court *cannot* conclude that, more likely than not, Titus failed to exhaust his administrative remedies. Consequently, Defendants' affirmative defense fails.

The undersigned District Judge finds no merit in Defendants' objections and determines, as did Magistrate Judge Frazier, that (a) Plaintiff Titus pursued the remedies available to him, and (b) Defendants failed to sustain their burden on the issue of exhaustion.  Accordingly, the Court **ADOPTS** Judge Frazier's Report (Doc. 73) in its entirety and **DENIES** the summary judgment motions (Docs. 31 and 58).

IT IS SO ORDERED.

DATED September 27, 2010.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge